UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Timothy Briesemeister,　　　　　　　　　　　　　File No. 19-cv-297 (ECT/KMM)

　　　　　Plaintiff,

v.

Nancy Johnston, Casandra Dallum,　　　　　　**OPINION AND ORDER**
Dr. Lawrence William, Dr. David Laurin,
Jolee A. Sunnarborg,

　　　　　Defendants.

Timothy Briesemeister, *pro se*.

Ali P. Afsharjavan, Attorney General's Office, Saint Paul, MN for Defendants Nancy Johnston, Casandra Dallum, Dr. Lawrence William, Dr. David Laurin, and Jolee A. Sunnarborg.

　　　　　Pro se Plaintiff Timothy Briesemeister is civilly committed to the Minnesota Sex Offender Program ("MSOP").  He brought this case under 42 U.S.C. § 1983 against Defendants—employees of MSOP and the Minnesota Department of Corrections—in their official and individual capacities alleging that they were deliberately indifferent to his serious medical needs in violation of his Fourteenth Amendment right to substantive due process.  Briesemeister's claims arise from Defendants' response to his need for dental care between May and October 2016.  Briesemeister describes the relevant events in a detailed, well-written complaint.  He alleges that a missing filling led unnecessarily to oral surgery, a four-day hospital stay, and considerable pain and suffering because of Defendants'

deliberate indifference. Briesemeister seeks declaratory and injunctive relief against Defendants in their official capacities and damages from Defendants in their individual capacities. Defendants have moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and their motions will be granted. Briesemeister's official-capacity claims must be dismissed for lack of subject-matter jurisdiction because Briesemeister has not alleged facts showing that he has Article III standing to seek prospective relief. Briesemeister's individual-capacity claims for damages must be dismissed because they are not plausibly pleaded.

I[1]

Briesemeister's allegations begin on May 24, 2016. That day, Briesemeister submitted a document entitled "Client Medical Request Form" informing MSOP medical staff that he was experiencing jaw pain. Compl. ¶ 9 [ECF No. 1].[2] Briesemeister's annual physical occurred the next day. *Id.* During his physical, MSOP medical staff noted that Briesemeister had pain in his right temporomandibular joint (or "TMJ") and that his teeth were in poor condition. *Id.* Medical staff recommended Briesemeister take a pain reliever and follow up with a dentist for further diagnosis and treatment. *Id.* At a follow-up

---

[1] Defendants bring a facial challenge to subject-matter jurisdiction. Mem. in Supp. at 1, n.1 [ECF No. 17]. In analyzing a facial challenge, as with a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In accord with these rules, the relevant facts are drawn entirely from Briesemeister's complaint and are accepted as true.

[2] The submission of a Client Medical Request Form seems to be the primary way individuals committed to MSOP are expected to seek health care.

2

appointment on June 6, Defendant Casandra Dallum, a dental hygienist, noted that Briesemeister was not then experiencing pain and advised him to submit a Client Medical Request Form if the pain returned. *Id.* ¶ 10.

On June 26, Briesemeister submitted a Client Medical Request Form telling MSOP staff that a filling in one of his teeth had fallen out while he was brushing leaving a "big hole" and that he "need[ed] a new filling ASAP." *Id.* ¶ 11. Briesemeister characterized his situation as a "dental emergency." *Id.* A dental assistant who received Briesemeister's request, Defendant Jolee Sunnarborg, evidently did not share Briesemeister's view that his situation posed an emergency; she responded that she would place Briesemeister on a list to see a dentist who was scheduled to begin working at MSOP in September. *Id.* Sunnarborg also instructed Briesemeister to notify MSOP staff and consult a nurse if he experienced severe pain. *Id.*

On June 29, Briesemeister submitted another Client Medical Request Form and a letter to a nursing supervisor regarding what he described as "[n]egligent dental care." *Id.* ¶ 12. In his letter, Briesemeister expressed dissatisfaction with MSOP's response to his request for a new filling and concerns about the condition of his affected tooth. *Id.* ¶ 12. Briesemeister wrote: "Not only do I have a certain amount of pain, but I am most worried that the thin wall of tooth left around the edges of my tooth after the filling fell out might break—especially if I have to wait two months or more before this filling can be replaced." *Id.* Briesemeister also expressed skepticism regarding Sunnarborg's assertion that a dentist would be available "starting in September." *Id.* Briesemeister wrote that "approximately an hour before [Sunnarborg] called my unit with the message that no dentist would be

3

available until September, a dentist (from DOC, as I understand it) was in health services replacing a filling for . . . another resident on my unit." *Id.*

The next day, Briesemeister was seen by dental hygienist Dallum. *Id.* ¶ 13. Briesemeister told Dallum that he was in severe pain "due to food getting stuck in the hole where the filling was" and that he was unable to wait for treatment. *Id.* Dallum wrote in Briesemeister's dental chart that his pain level was "1" but increased to "4" at night and became "severe" during chewing. *Id.* ¶ 14.[3] Dallum also took x-rays and noted swelling and possible dental pulp exposure. *Id.* ¶¶ 13–14; *see id.* ¶ 95. Dallum later reported that she consulted by telephone with Defendant Dr. Lawrence William, a dentist employed by the Minnesota Department of Corrections, about Briesemeister's symptoms, and that Dr. William concluded that emergency care was not necessary at that time. *Id.* ¶ 100. The record is unclear as to whether Dr. William reviewed Briesemeister's x-rays as part of this consult. *Id.* ¶¶ 96–101.

On July 6, Briesemeister submitted a Client Medical Request Form to a nursing supervisor in which he requested again to be examined by a dentist. *Id.* ¶ 15. Briesemeister wrote that he was experiencing more pain and difficulty eating. *Id.* Briesemeister received no response to this request. *Id.* On July 18, Dallum spoke with Briesemeister. *Id.* ¶¶ 16–17. She told him that missing fillings are not a dental emergency and provided him with

---

[3]   Briesemeister does not allege, and the record does not indicate, what pain scale Dallum used. It is uncertain, therefore, whether "4" is in the middle of the scale or somewhere else.

4

dental wax to use until he could be seen by a dentist. *Id.* Dallum advised Briesemeister to notify MSOP medical staff if his pain became severe. *Id.*

"On or about August 20, 2016," Briesemeister received an annual health assessment from MSOP health services. *Id.* ¶ 18. The assessment noted that Briesemeister had "poor dentition" and "intermittent right TMJ pain" and that he was "encouraged to use hot packs, rest, use ibuprofen and [follow up] with [the] dentist when in discomfort." *Id.* ¶ 18.

On September 25, Briesemeister submitted a Client Medical Request Form to the MSOP nursing director requesting immediate medical attention from a dentist for his missing filling. *Id.* ¶ 19. The nursing director informed Briesemeister that he would receive a pass to see the dentist within the next two weeks, but Briesemeister didn't have to wait that long. *Id.* ¶ 20. On September 28, Defendant Dr. David Laurin, a dentist contracted to work at MSOP, examined Briesemeister and noted in Briesemeister's chart that he was experiencing intermittent bleeding and had gross caries (or decay) in his tooth that was possibly non-restorable. *Id.* ¶¶ 20–22. Dr. Laurin filled the tooth. *Id.* ¶ 22.

On October 3, Dr. Laurin examined Briesemeister again and determined that Briesemeister had an abscess in his recently-filled tooth. *Id.* ¶¶ 20, 23. Dr. Laurin informed Briesemeister that he could refer him to an endodontist for a root canal, a procedure for which Briesemeister would have to pay out-of-pocket, or he could extract the tooth. *Id.* Briesemeister opted to have the tooth pulled, and Dr. Laurin removed it. *Id.* After the procedure, Briesemeister submitted a Client Medical Request Form inquiring whether he would be receiving an antibiotic to treat infection and Vicodin for pain relief. *Id.* ¶ 24. Briesemeister wrote that he understood these medications were to have been prescribed by

Dr. Laurin, but the nursing staff had provided him with only naproxen for pain relief. *Id.* Briesemeister reported that his jaw was swollen and that he was experiencing pain. *Id.* Sunnarborg responded, advising Briesemeister to take the naproxen and that an antibiotic was unnecessary. *Id.* Sunnarborg also advised Briesemeister that he should let staff know if he experienced other problems. *Id.*

On October 4, Briesemeister submitted Client Medical Request Forms to both medical and dental staff, complaining of swelling, pain, difficulty swallowing, dizziness and fatigue. *Id.* ¶¶ 27–29. MSOP medical and dental staff examined Briesemeister the following day and, after consulting an outside physician, determined that Briesemeister should be transported to a hospital for treatment of a suspected infection. *Id.* ¶¶ 20, 30–34. At the hospital, physicians performed oral surgery to drain an abscess and administered IV antibiotics. *Id.* ¶¶ 20, 35–41. Briesemeister remained in the hospital until October 9. *Id.* ¶ 45. MSOP staff cared for Briesemeister after his hospital stay. *Id.* ¶¶ 45–48, 50, 52–64. At one of Briesemeister's follow-up appointments, Dr. Laurin explained that he prescribed no antibiotic because he saw no signs of infection after he extracted Briesemeister's tooth. *Id.* ¶ 56. Dr. Laurin also stated that "he was wrong and that there was an infection but it was deeper in the tissues and thus he was unable to visualize any [symptoms] to indicate a need for antibiotic therapy at that time." *Id.* (quoting dental chart).[4]

Following these events, an investigative report was completed by Michael Woods, the Regional Ombudsman of the Office of the Minnesota Ombudsman for Mental Health

---

[4] Briesemeister subsequently received two cards from Sunnarborg informing him that appointments had been scheduled with a dentist to fill his extracted tooth. *Id.* ¶ 57.

and Developmental Disabilities. *Id.* ¶¶ 67–109. In his report, Woods noted that MSOP "did not have a dentist available to provide routine care during the relevant period in question." *Id.* ¶ 90. He further noted that Dr. Will[iam] was "available in 'emergent' situations" but that it was "unclear what circumstances would prompt either the MSOP Hygienist or Health Services to request his intervention." *Id.* Woods wrote that it was "unclear, again due to lack of documentation, why Health Services did not refer Plaintiff to be seen by the DOC Dentist" in May 2016. *Id.* ¶ 92. Woods raised concerns about MSOP's response to Briesemeister's dental concerns, MSOP dental staff's consideration and handling of the x-rays taken in June 2016, and the deterioration of Briesemeister's tooth that occurred between the time his filling fell out and when it was replaced. *Id.* ¶¶ 68–108. He also concluded that Briesemeister required oral surgery "due to a dental abscess caused by a delay in adequately diagnosing and treating the [] tooth back on June 30, 2016." *Id.* ¶ 108. Woods recommended that MSOP staff should, in the future, "ascertain and document" the reasons why clients miss appointments, "improve documentation in the client's Health Services and Dental charts," and "take steps to ensure that the clients are always provided with dental services, even during times when the program is without a contracted dentist." *Id.* ¶ 109.

## II

### A

Briesemeister's official-capacity claims must be dismissed for lack of subject-matter jurisdiction because Briesemeister does not have Article III standing to pursue them. "[A] suit against a state official in his or her official capacity is not a suit against the official

7

but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id.* The Eleventh Amendment bars claims for damages against state employees in their official capacities. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). But "state officials may be sued in their official capacities for prospective injunctive relief when the plaintiff alleges that the officials are acting in violation of the Constitution or federal law." *Mo. Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)); *see Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (quotation omitted)). Here, Briesemeister does not seek damages with his official-capacity claims; he "requests declaratory and injunctive relief against Defendants in their official capacities only." Compl. ¶¶ 2, H.

To plead proper official-capacity claims, Briesemeister must allege facts showing that he meets the jurisdictional standing requirements imposed by Article III, § 2 of the United States Constitution. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Article III standing requires a plaintiff to show (1) he or she suffered an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury-in-fact is "the invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Id.* at 560 (citations and internal quotation marks omitted). When a plaintiff seeks injunctive relief, "the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000); *see Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("Standing to seek injunctive relief requires a plaintiff . . . to show a likelihood of a future injury."); *Lyons*, 461 U.S. at 105, 107 n.8 (stating a plaintiff must show a "real and immediate threat" of future injury). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see Lyons*, 461 U.S. at 105. To show he has standing to maintain his official-capacity claims, then, Briesemeister must allege facts plausibly showing that he faces a threat of ongoing harm or a likelihood of future injury. He has not. The injuries Briesemeister alleges he suffered occurred more than three years ago between May and October of 2016. *See generally* Compl. He alleges no facts suggesting that his injuries are ongoing or that he faces a real or immediate threat that his rights will be violated by Defendants in the future. Therefore, Briesemeister's official-capacity claims must be dismissed.[5]

---

5   Briesemeister's request for declaratory relief does not alter this conclusion. When "[t]here is no claimed continuing violation of federal law" or any threat of a future violation, "the award of a declaratory judgment . . . would be useful in resolving the dispute over the past lawfulness of [a defendant's] action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 73 (1985). If a plaintiff does not intend to make such a claim in later state

B

Briesemeister's individual-capacity damages claims must be dismissed because they are not plausibly pleaded. As noted, *supra* at 2, n.1, in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S .at 556). Pro se complaints are to be construed liberally, but "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).

Section 1983 provides that every person who, under color of law, deprives a citizen of the United States "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. "To state a claim under § 1983, the

---

proceedings, "the declaratory judgment would serve no purpose whatever" in resolving a dispute over the past lawfulness of a defendant's action and is, therefore, unavailable. *Id.* at n.2. The declaratory relief Briesemeister seeks is retrospective in nature and is, likewise, unavailable in this case. *See id.*

plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citation omitted). A civilly committed individual's right to medical care "arises under the Due Process Clause of the Fourteenth Amendment." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (citation omitted); *see* U.S. Const. amend. XIV, § 1. When a person who is civilly committed alleges a Fourteenth Amendment claim of constitutionally deficient medical care, courts "apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quoting *Scott*, 742 F.3d at 339); *see Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "Whether an official was deliberately indifferent entails both an objective and a subjective analysis" and the application of the standard is a "factually-intensive inquiry." *Scott*, 742 F.3d at 339–40 (quotation omitted); *see Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011). To prove deliberate indifference, a plaintiff must show that "(1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs." *Mead*, 794 F.3d at 936 (citation omitted). "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)); *see Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.").

A medical need is objectively serious if "it either has been diagnosed by a physician as requiring treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott*, 742 F.3d at 340 (quotations omitted); *see Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (stating dental condition is a serious medical need when an inmate "show[s] outward signs of injury, such as bleeding and swelling, that a layperson would recognize" or "a medical professional diagnosed the dental pain as requiring treatment."). "Delay in the provision of treatment or in providing examinations can violate [a civil committee's] rights when the [civil committee's] ailments are medically serious or painful in nature." *Dadd v. Anoka Cty.*, 827 F.3d 749, 755 (8th Cir. 2016) (quotation omitted). When a plaintiff "alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)); *see Dadd*, 827 F.3d at 756 (stating "no bright line exists" as to what length of delay may give rise to a viable constitutional claim).

Briesemeister plausibly pleads that he suffered an objectively serious medical need. Accepting the allegations of the complaint as true, Briesemeister experienced several physical symptoms that would have alerted a layperson to the need for medical care. These included "a big hole" that left a "thin wall . . . around the edges" of a tooth, escalating pain, swelling, difficulty swallowing, dizziness, and fatigue. Compl. ¶¶ 12, 20, 23, 27–41. Again, accepting the truth of Briesemeister's allegations, MSOP staff confirmed the

seriousness of Briesemeister's medical needs. Dallum, for example, documented Briesemeister's complaints of pain and her observations that Briesemeister suffered from swelling and possible pulpal exposure, and she determined that Briesemeister's condition warranted x-rays and a consultation with Dr. William. *Id.* ¶¶ 13–14, 95, 100. In support of their motion to dismiss, Defendants seem to separate Briesemeister's medical needs into three distinct categories: the missing filling, the abscess that resulted in the extraction of his tooth, and the infection that required his hospitalization and surgery. Mem. in Supp. at 6–7 [ECF No. 17]. Defendants argue that the missing filling was not an objectively serious medical need and contend that Briesemeister did not suffer an objectively serious medical need until just before his September 28 appointment. *Id.* This argument is not supported by the law or the facts. The two cases Defendants cite to support this argument—*Holden* and *Mathison v. Swenson*, 143 Fed. App'x 730 (8th Cir. 2005)—are distinguishable. In *Holden*, the court affirmed the entry of summary judgment against a pretrial detainee's deliberate-indifference claim because there was no evidence showing visible symptoms of tooth pain (swelling or infection, for example) and "no evidence any delay in treatment negatively impacted his prognosis." 663 F.3d 336 at 342–43. Similarly, in *Mathison*, the court affirmed the entry of summary judgment against a prisoner's deliberate-indifference claim, noting that the prisoner "never complained of any dental problems" and, when he was examined, showed "no swelling or signs of an abscess." 143 Fed. App'x 730, 732 (8th Cir. 2005). By contrast, Briesemeister alleges that he suffered visible symptoms of tooth pain, that he complained to MSOP medical and dental staff concerning his problems, and that a delay in treatment worsened his condition. *See* Compl. ¶¶ 11–12, 14–15, 19, 21–34,

13

39, 93–108. The summary-judgment posture of the cases Defendants cite adds a reason to distinguish them. Here, Briesemeister's allegations must be accepted as true. No doubt Briesemeister's allegations concerning his missing filling are not as extreme as the facts in some cases Defendants cite. *See*, *e.g.*, *Hartsfield v. Coburn*, 371 F.3d 454, 457 (8th Cir. 2004) (concluding that plaintiff's need for medical attention would have been obvious to layperson from evidence of extreme pain resulting from loose or infected teeth accompanied by bleeding, swelling, and difficulty sleeping and eating); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (concluding that impacted and infected wisdom tooth, accompanied by swelling and pus, presented serious medical need); *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (concluding that plaintiff, who suffered from infected tooth, swelling, and extreme pain, alleged facts that could support § 1983 claim). But it is difficult to accept that a layperson wouldn't recognize a "big hole" in a tooth that leaves only a "thin wall" remaining as a serious medical need, particularly when accompanied by pain and the other symptoms Briesemeister alleges to have experienced. Compl. ¶ 12.

2

Briesemeister must also allege that Defendants knew of, but deliberately disregarded, his medical needs. *Mead*, 794 F.3d at 936. Deliberate indifference is "more than negligence, more even than gross negligence." *Fourte*, 746 F.3d at 387 (quotations omitted); *see Smith v. Clarke*, 458 F.3d 720, 724 (8th Cir. 2006) ("Malpractice alone is not actionable under the [E]ighth [A]mendment."). The requisite mental state is "akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006); *see Farmer v. Brennan*, 511 U.S. 825,

14

839–40 (1970). A plaintiff must show both that the defendant had actual knowledge that the plaintiff's medical condition created a substantial risk of serious harm and that the defendant failed to act to abate that risk. *See Coleman*, 114 F.3d at 785–86; *Long*, 86 F.3d at 765 ("[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge."). "Deliberate indifference may be demonstrated by [those] who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by [] doctors who fail to respond to . . . serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1235, 1239 (8th Cir. 1997). However, "[a]s long as this threshold is not crossed, [civilly committed individuals] have no constitutional right to receive a particular or requested course of treatment, and [] doctors remain free to exercise their independent medical judgment." *Id.* A plaintiff alleging a delay in treatment "must present verifying medical evidence that [] officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden*, 663 F.3d at 342 (citation and internal quotation marks omitted); *see Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016).

Briesemeister does not plausibly allege deliberate indifference. With respect to this element of his claim, Briesemeister's description of the care he received is self-defeating.[6]

---

[6] Briesemeister names MSOP Executive Director Nancy Johnston as a party in the caption and identifies her position and address at MSOP, but he does not refer to her anywhere else in the complaint. This is insufficient to allege Johnston's personal involvement in or direct responsibility for the alleged violations as required to plead a § 1983 claim against a supervisory defendant. *See Jackson*, 747 F.3d at 543; *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018).

If it was tied to a serious medical need, Briesemeister's initial complaint of jaw pain on May 24, 2016, was addressed by MSOP medical staff during an examination the next day. Compl. ¶ 9. Medical staff recommended that Briesemeister take a pain reliever and follow up with a dentist, and he had a follow-up appointment with dental hygienist Dallum on June 6. *Id.* at ¶ 10. At that time, Briesemeister was not experiencing pain. *Id.* Briesemeister does not allege that the roughly two-week delay between his physical and his June 6 appointment with Dallum shows deliberate indifference, and there is no plausible reason to conclude it does. Though Sunnarborg's initial response to Briesemeister's June 26 Client Medical Request Form—describing how his filling had fallen out leaving a "big hole"—was to put Briesemeister in line to see a dentist in September, Briesemeister's June 29 complaint prompted the scheduling of an appointment with Dallum the following day, on June 30. *Id.* ¶¶ 11–13. Thus, if Sunnarborg's first response plausibly showed deliberate indifference, Briesemeister's allegations show that was remedied when he was given the June 30 appointment and examination. As Briesemeister describes the June 30 appointment, Dallum accurately recorded Briesemeister's complaints, examined him, took x-rays, documented her observations of swelling and dental pulp exposure, and chose to consult with Dr. William. *Id.* ¶¶ 13–14, 95–96, 100. For his part, Dr. William is alleged to have responded to Dallum's call, communicated with her, and offered his opinion that emergency care was not necessary. *Id.* ¶¶ 100–01. The conclusion that Briesemeister did not require emergency care at that time may have been incorrect or even negligent, but Briesemeister's allegations regarding the June 30 examination do not plausibly show that either Dallum or Dr. William was deliberately indifferent to Briesemeister's condition. In

response to Briesemeister's complaints of more pain and difficulty eating, which he communicated in a July 6 Client Medical Request Form, Dallum spoke with Briesemeister on July 18, provided him with dental wax, and advised him to notify MSOP staff if his pain became severe. *Id.* ¶¶ 15–17. Again, no allegations suggest that the twelve-day gap between his submission of this form and his visit with Dallum plausibly shows deliberate indifference. Briesemeister's Sunday, September 25 request for immediate attention resulted in an appointment with Dr. Laurin on Wednesday, September 28, at which time Dr. Laurin is alleged to have first been made aware of Briesemeister's condition and filled the tooth. *Id.* ¶¶ 19–22. Briesemeister's complaints and symptoms following Dr. Laurin's September 28 treatment were serious, but Briesemeister alleges that they were addressed promptly. Dr. Laurin's discovery of the abscess during Briesemeister's October 3 appointment prompted Dr. Laurin to pull the tooth during that same appointment. *Id.* ¶¶ 20, 23. Briesemeister's October 4 complaints of swelling and other serious symptoms prompted an examination and hospitalization the next day. *Id.* ¶¶ 27–34. Briesemeister alleges that Dr. Laurin's treatment was deficient because the abscess and infection followed soon after and because Dr. Laurin did not prescribe an antibiotic or Vicodin. *See id.* ¶ 24. These allegations suggest, at most, negligence and Briesemeister's disagreement with treatment decisions. *See id.* ¶ 56. They do not plausibly suggest deliberate indifference. The complaint's allegations show that Dr. Laurin was responsive to and heedful of Briesemeister's condition. Briesemeister alleges that Sunnarborg "failed to take any action" in response to his October 3 Client Medical Request Form asking that he be given, not naproxen, but "real medicine" to treat his pain and swelling. *Id.* ¶ 24. Briesemeister

alleges Sunnarborg responded on October 4, confirming: "[N]aproxen is correct—no antibiotic needed. Should feel better. Let us know if you have any other problems." *Id.* These allegations—that Sunnarborg responded to Briesemeister's inquiry the day after he submitted it, though not with the answer Briesemeister wanted—no doubt show that Briesemeister disagreed with this part of his treatment, but they do not plausibly show deliberate indifference.[7] Finally, Briesemeister alleges no facts suggesting that Defendants acted with deliberate indifference after he returned to MSOP following his hospitalization.

Briesemeister cites several Eighth Circuit cases that he says support his claims, but these cases show that Briesemeister's allegations are insufficient to plead a plausible deliberate-indifference claim. For example, in *Hartsfield*, the plaintiff suffered from "a severe toothache and three loose teeth." 371 F.3d at 456. Prison officials "did nothing," and the jail doctor withheld all treatment for roughly six weeks for "nonmedical reasons—[the plaintiff's] behavioral problems." *Id.* at 457. Briesemeister alleges nothing like that here. He does not allege that Defendants ever deliberately withheld treatment for reasons unconnected to his condition, and the delays in treatment he alleges do not resemble the delay in *Hartsfield*.[8] The other cases Briesemeister cites repeat the point. *See Moore v.*

---

[7] Briesemeister alleges that the two cards he received from Sunnarborg in mid-October notifying him of appointments to fill his since-extracted tooth show deliberate indifference. Compl. ¶ 57. No doubt this allegation shows an error, perhaps even a callous one. But given that Briesemeister's condition was fully treated at that point, the allegation does not plausibly support an inference that Sunnarborg was deliberately indifferent to an existing medical need.

[8] Obviously, whether deliberate indifference plausibly may be inferred from a delay in treatment is a fact-dependent question. What if, for example, a prisoner alleged that prison officials learned immediately that he had suffered a heart attack, a severed jugular

18

*Jackson*, 123 F.3d 1082, 1086–87 (8th Cir. 1997) (noting multiple grievances had been filed by inmate with no response and, despite dentist's observation of a possible infection, no treatment was provided until months later); *Boyd*, 47 F.3d at 969 (observing that dentist waited three weeks to complete referral form to oral surgeon despite evidence he was aware of impacted and infected wisdom tooth); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (noting evidence that dentist was aware of inmate's swelling, headache, and severe pain but did not extract tooth until almost a month later); *Fields*, 734 F.2d at 1314–15 (identifying issue of material fact as to whether sheriff intentionally delayed treatment for infected tooth to compel inmate to pay earlier dental bill despite knowledge of inmate's pain).[9]

*

Briesemeister's allegations are clear and very detailed. His complaint contains 113 paragraphs over 55 pages. In view of the complaint's thoroughness and the conclusion that its allegations are self-defeating, it would serve no purpose to permit Briesemeister the opportunity to file and serve an amended complaint.

---

vein, or some similar, death-dealing condition? In these circumstances, a delay of even several minutes might be probative of deliberate indifference.

[9] The report prepared by Regional Ombudsman Woods and its conclusions do not lend plausibility to Briesemeister's claims. The report identified flaws in MSOP's handling of Briesemeister's care and its provision of dental treatment generally, but it did not come close to finding facts or drawing legal conclusions suggestive of deliberate indifference.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 14] is **GRANTED**.

2. Plaintiff's complaint is **DISMISSED** with prejudice and on the merits.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 18, 2020            s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court